IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY D. GLADSTEIN,

    Plaintiff,

v.

AURORA LOAN SERVICES, LLC
and AURORA BANK, FSB,

    Defendants.

CIVIL ACTION NO.
1:11-CV-02784-TWT-LTW

## MAGISTRATE JUDGE'S ORDER AND NON-FINAL REPORT AND RECOMMENDATION

Pending before this Court are Defendants Aurora Loan Services, LLC and Aurora Bank, FSB's (collectively "Defendants") Motion to Dismiss and Plaintiff Jeffrey D. Gladstein's ("Plaintiff") Motion to Amend Complaint. Docket Entries [5, 10]. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. Docket Entry [5]. Specifically, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with respect to:

(1) Plaintiff's breach of contract claim against Defendant Aurora Bank, FSB;

(2) Plaintiff's Fair Debt Collection Practices Act claim;

(3) Plaintiff's Real Estate Settlement Procedures Act claim against Defendant Aurora Bank, FSB;

(4) Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Bank, FSB; and

(5) Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services, LLC with respect to Plaintiff's allegation that Aurora Loan Services, LLC breached the covenant by reporting to credit agencies that Plaintiff's loan was past due without conducting a proper investigation.

The undersigned also **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** with respect to:

(1) Plaintiff's breach of contract claim against Defendant Aurora Loan Services, LLC;

(2) Plaintiff's Fair Credit Reporting Act claim;

(3) Plaintiff's Real Estate Settlement Procedures Act claim against Defendant Aurora Loan Services, LLC; and

(4) Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services, LLC with respect to Plaintiff's allegations that Aurora Loan Services, LLC breached the covenant by: receiving four payments from Plaintiff

2

on or before the applicable due date(s), but refusing to cash, negotiate, and/or post them; failing to make Plaintiff's homeowner's insurance premium payments, causing Plaintiff's coverage to be cancelled; wrongfully holding funds remitted by Plaintiff in a "suspense" account; and wrongfully instituting foreclosure proceedings.

The undersigned further **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED AS MOOT** with respect to Plaintiff's breach of fiduciary duty claim, negligence claim, wrongful foreclosure claim, and Fair Business Practices Act claim.

Additionally, the undersigned **GRANTS** Plaintiff's Motion to Amend Complaint, as Plaintiff is entitled to amend his Complaint as a matter of right. Docket Entry [10].

## PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff initiated the instant action by filing a Complaint on August 19, 2011. Docket Entry [1]. Defendants filed a motion to dismiss Plaintiff's Complaint on September 13, 2011. Docket Entry [5]. Fourteen days later, on September 27, 2011, Plaintiff filed a motion to amend his Complaint. Docket Entry [10].

Rule 15 of the Federal Rules of Civil Procedure provides that a plaintiff may amend his complaint once as a matter of course within twenty-one days after serving it or within twenty-one days after the earlier of service of the responsive pleading or service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Thereafter,

3

a plaintiff may amend his complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

Here, Plaintiff filed his Amended Complaint within twenty-one days after Defendants served their Rule 12(b)(6) motion. Therefore, Plaintiff is permitted to file his Amended Complaint as a matter of right, without this Court's permission.[1] Accordingly, the undersigned **GRANTS** Plaintiff's Motion to Amend Complaint as a matter of right. Docket Entry [10].

## DEFENDANTS' MOTION TO DISMISS

Before Plaintiff moved to amend his Complaint, Defendants filed their Motion to Dismiss Plaintiff's Complaint. With Plaintiff's Amended Complaint now before the Court, some of the arguments in Defendants' Motion to Dismiss are moot. Defendants argue for the dismissal of Plaintiff's breach of fiduciary duty, negligence, wrongful foreclosure, and Fair Business Practices Act claims, all of which Plaintiff has removed from his Amended Complaint. Therefore, the undersigned **RECOMMENDS** that Defendants' request to dismiss these claims be **DENIED AS MOOT**. Next, this Court must address the question of whether Plaintiff's breach of contract, Fair Credit

---

[1] Defendants do not object to Plaintiff's Motion to Amend Complaint.

Reporting Act, Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, and breach of the covenant of good faith and fair dealing claims, as now amended, should survive dismissal.

## A. Rule 12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Brown v. Crawford Cnty., Ga., 960 F.2d 1002, 1010 (11th Cir. 1992). In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005); see also Iqbal, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint must be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See Iqbal, 556 U.S. at 678. "A claim has facial plausibility

5

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).

"When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment." Brown v. One Beacon Ins. Co. Inc., 317 F. App'x 915, 917 (11th Cir. 2009) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (per curiam)).

### B.    Plaintiff's Complaint Is Not A Shotgun Pleading

Defendants argue that Plaintiff's Complaint is a shotgun pleading because Plaintiff makes no distinction between the conduct of Defendant Aurora Loan Services, LLC ("Aurora Loan Services") and Defendant Aurora Bank, FSB ("Aurora Bank"). This Court disagrees. Plaintiff alleges that "[u]pon information and belief, Aurora Bank FSB ('Aurora Bank') is a doing business as name for Aurora Loan Services, LLC."

6

(Am. Compl. ¶ 3).[2] Because Plaintiff alleges that Defendant Aurora Loan Services and Defendant Aurora Bank are the same entity and because this allegation must be accepted as true on a motion to dismiss, Plaintiff may link Defendants together in his Amended Complaint without converting his Amended Complaint into a shotgun pleading.

## C. Plaintiff's Breach of Contract Claim

Plaintiff's breach of contract claim should survive dismissal with respect to Defendant Aurora Loan Services, but not with respect to Defendant Aurora Bank. To establish the existence of a contract, "[u]nder Fed. R. Civ. P. 8(a), a plaintiff must 'either attach a copy of an alleged contract to the complaint or plead it according to its legal effect.'" McClelland v. First Ga. Cmty. Bank, No. 5:09-CV-256 (CAR), 2010 WL 3199349, at *3 (M.D. Ga. Aug. 12, 2010) (internal citation omitted). In the Amended Complaint, Plaintiff alleges that "[o]n or around May 24, 2010, Aurora Loan Services, LLC was assigned a mortgage loan by Mortgage Electronic Registration Systems, Inc., relative to property located at 852 Greenwood Ave. #A N.E. Atlanta, GA 30306." (Am. Compl. ¶ 5). Plaintiff attaches a copy of the adjustable rate note agreement, the security deed between Plaintiff and Midtown Bank & Trust Company, the original lender, and

---

[2] Plaintiff included this same allegation in his original Complaint. (See Compl., Docket Entry [1], ¶ 3).

the Corporate Assignment of Mortgage to Defendant Aurora Loan Services, filed and recorded on May 24, 2010.[3] (Am. Compl., Ex. A). In the Corporate Assignment of Mortgage,[4] Defendant Aurora Loan Services accepted:

> The said Mortgage together with the Note or other evidence of indebtedness (the 'Note'), said Note having an original principal sum of $320,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained.

(Corporate Assignment of Mortgage, Docket Entry [10-5], p. 40). This assignment appears to have created a contractual relationship between Plaintiff and Defendant

---

[3] Plaintiff also attaches various other assignments to his Amended Complaint. In reviewing the documents attached to Plaintiff's Amended Complaint, the Court observes that on March 6, 2007, the security deed was assigned to Lehman Brothers Bank, FSB from Midtown Bank & Trust Company. (Am. Compl., Ex. A, pp. 35-36). On June 19, 2007, a Corporate Assignment of Mortgage was filed transferring the mortgage from Midtown Bank & Trust Company to Mortgage Electronic Registration Systems, Inc. (Id. p. 37). A Corporate Assignment of Mortgage was filed on May 24, 2010, transferring the mortgage from Lehman Brothers Bank, FSB to Midtown Bank & Trust Company. (Id. pp. 38-39). A handwritten note appears on the face of this assignment indicating that the assignment was effective May 30, 2007. (Id.) This assignment seems to have been filed to fix a gap in the chain of title. On May 24, 2010, a Corporate Assignment of Mortgage was filed transferring the mortgage from Mortgage Electronic Registration Systems, Inc. to Aurora Loan Services LLC. (Id. pp. 40-41).

[4] Plaintiff's exhibits and the parties' briefs appear to use the words "security deed," "mortgage," and "deed of trust" interchangeably to refer to the instrument that secures Plaintiff's indebtedness.

8

Aurora Loan Services that is governed by the security deed and the adjustable rate note agreement. Thus, Plaintiff's Amended Complaint and the supporting exhibits suggest that a contract exists between Plaintiff and Defendant Aurora Loan Services.

The elements for a breach of contract claim are (1) the breach, (2) and the resultant damages, (3) to the party who has the right to complain about the contract being broken. Hawkins v. DeKalb Med. Ctr., 721 S.E.2d 131, 143 n.44 (Ga. App. 2011) (internal citation omitted). The security deed requires Plaintiff, the borrower, to pay the lender for certain escrow items, including "premiums for any and all insurance required by Lender under Section 5." (Security Deed, Docket Entry [10-5], ¶ 3). Section 5 of the security deed obligates Plaintiff to maintain property insurance. (Security Deed ¶ 5). The security deed also obligates the lender to "apply the Funds to pay the Escrow Items no later than the time specified under RESPA." (Security Deed ¶ 3). Plaintiff echos this requirement in his Amended Complaint by alleging that "Defendants were required, inter alia, to pay homeowner's insurance premiums on behalf of Plaintiff to Plaintiff's homeowner's insurance carrier and to process payments made by Plaintiff." (Am. Compl. ¶ 45). Plaintiff further alleges that "Defendants failed to make homeowner's insurance premium payments to Plaintiff's homeowner's insurance carrier," and "[a]s a result of this failure, Plaintiff's homeowner's insurance was cancelled by his

9

homeowner's insurance carrier." (Am. Compl. ¶¶ 46-47). Plaintiff's allegations, coupled with the security deed, sufficiently state a breach of contract claim against Defendant Aurora Loan Services.

As for Defendant Aurora Bank, Plaintiff does not provide a similar assignment as to Aurora Bank. Plaintiff does allege that "<u>Defendants</u> were assigned the original Loan made by Midtown," and "Plaintiff is in privity of contract with <u>Defendants</u> with respect to the Loan." (Am. Compl. ¶ 44) (emphasis added). However, the exhibits attached to Plaintiff's Amended Complaint do not bare out Plaintiff's assertion with respect to Defendant Aurora Bank. "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1206 (11th Cir. 2007). None of the documents related to Plaintiff's breach of contract claim (the adjustable rate note agreement, the security deed, and the various assignments) mention Defendant Aurora Bank. As such, Plaintiff's Amended Complaint and supporting exhibits fail to plausibly allege that a contract exists between Plaintiff and Defendant Aurora Bank, and Plaintiff fails to state a breach of contract claim against Defendant Aurora Bank.

In Defendants' reply brief, Defendants argue that Plaintiff erroneously relies on the promissory note as the basis for a contract claim against Defendants when neither

10

Defendant is a party to or an assignee of the indebtedness evidenced by the promissory note. It is unclear to this Court whether this argument is directed to Plaintiff's original Complaint or his Amended Complaint.[5] Either way, this argument is undermined by the exhibits Plaintiff attaches to his Amended Complaint. In the breach of contract count, Plaintiff references the May 24, 2010 assignment of his loan to "Defendants" and attaches the assignment to his Amended Complaint. Although Plaintiff simply references the assignment of his loan, the actual assignment document that he attaches to his Amended Complaint assigns "the said Mortgage together with the Note" to Defendant Aurora Loan Services. (Corporate Assignment of Mortgage). Construing Plaintiff's Amended Complaint and the accompanying exhibits in a light most favorable to Plaintiff, the Court concludes that Plaintiff may properly rely upon the adjustable rate note agreement as the basis of his breach of contract claim against Defendant Aurora Loan Services. Plaintiff also may rely upon the security deed.

Defendants next argue that Plaintiff's reliance on the assignment of the deed of trust as conveying an assignment of the loan is misguided and fails to recognize the fundamental distinction between the promissory note and the deed of trust. Defendants

---

[5]    Defendants filed their reply in support of their Motion to Dismiss after Plaintiff filed his Motion to Amend Complaint.

11

AO 72A
(Rev.8/82)

go on to explain what a promissory is and what a deed of trust is, but fail to explain how the distinction between the two prevents the Corporate Assignment of Mortgage from transferring both the mortgage and the note together to Defendant Aurora Loan Services. Defendants' argument is particularly puzzling given that the plain language of the Corporate Assignment of Mortgage explicitly assigns "the said Mortgage together with the Note" to Defendant Aurora Loan Services. (Id.) (emphasis added). Absent further clarification from Defendants on this point, Plaintiff's reliance on the Corporate Assignment of Mortgage as part of his breach of contract claim seems reasonable.

Lastly, Defendants argue that even if Plaintiff seeks to rely on the security deed and not the promissory note, Plaintiff's Complaint is devoid of any allegation of breach by either Defendant. Defendants' argument is unfounded as to Plaintiff's Amended Complaint. As noted above, the security deed requires Defendant Aurora Loan Services to apply the funds it receives in escrow to pay for certain items, such as Plaintiff's homeowner's insurance premiums. Plaintiff alleges that Defendant Aurora Loan Services failed to apply such funds to pay the premiums as required, which resulted in the cancellation of his insurance. Thus, contrary to Defendants' argument, Plaintiff clearly alleges that Defendant Aurora Loan Services breached its obligations under the security deed by failing to pay his homeowner's insurance premiums.

12

AO 72A
(Rev.8/82)

Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's breach of contract claim be **DENIED** with respect to Defendant Aurora Loan Services and **GRANTED** with respect to Defendant Aurora Bank.

### D.  Plaintiff's Fair Credit Reporting Act Claim

Plaintiff's Fair Credit Reporting Act Claim ("FCRA") also should survive dismissal. "The FCRA seeks to promote the credit reporting industry's responsible dissemination of accurate and relevant information." Yang v. Gov't Emps. Ins. Co., 143 F.3d 1320, 1322 (11th Cir. 1998) (citing 15 U.S.C. § 1681(b)). Consistent with this purpose, the FCRA requires that once a consumer reporting agency receives notice of disputed information from a consumer, the agency must provide notice of the dispute "to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer." 15 U.S.C. § 1681i(a)(2). The person who receives the notice from the consumer reporting agency must then investigate the disputed information, report the results of the investigation to the consumer reporting agency, and make any necessary modifications. 15 U.S.C. § 1681s-2(b)(1).

To properly assert a FCRA claim pursuant to 15 U.S.C. § 1681s-2(b), the plaintiff must allege that the defendant received the proper notice from the consumer reporting

13

agency pursuant to 15 U.S.C. § 1681i(a)(2), and the defendant failed to uphold its duties pursuant to 15 U.S.C. § 1681s-2(b). Pinckney v. SLM Fin. Corp., 433 F. Supp. 2d 1316, 1319 (N.D. Ga. 2005). Defendants argue that Plaintiff's FCRA claim is subject to dismissal because Plaintiff failed to allege that Defendants received notice of a dispute from a consumer reporting agency. In response, Plaintiff amended his Complaint to add the allegation that "[u]pon information and belief, Defendants were informed by the various credit reporting agencies that the erroneous and derogatory credit remarks made by Defendants were disputed by Plaintiff." (Am. Compl. ¶ 22; see also Am. Compl. ¶ 58). Defendants do not argue that Plaintiff's amended FCRA claim is inadequately pled. Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's FCRA claim be **DENIED**.

### E.    Plaintiff's Fair Debt Collection Practices Act Claim

Unlike Plaintiff's FCRA claim, Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim should be dismissed. "The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers." Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (citing 15 U.S.C. § 1692(e); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010)). To prevail on a FDCPA claim, a plaintiff must establish that: (1) he

14

has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. (Id.) (internal quotation marks and citations omitted). At issue here is whether Plaintiff has alleged sufficient facts to demonstrate that either or both Defendants are "debt collectors."

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). On the other hand, a "debt collector" is not "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Courts have interpreted this exclusion to mean that a mortgage servicer is not covered by the FDCPA if the servicer began servicing the debt when it was not in default. Stroman v. Bank of Am. Corp., ---F. Supp. 2d ----, No. 10-cv-4080-AT, 2012 WL 1123730, at *6 (N.D. Ga. Mar. 30, 2012) (collecting cases).

Plaintiff's Amended Complaint does not contain enough factual allegations to

15

support his conclusion that Defendants are "debt collectors." Plaintiff does not allege that he was in default at the time either Defendant assumed responsibility for servicing his mortgage loan. In fact, Plaintiff's lawsuit is premised upon his contention that he has not been in default on his loan since it was modified. Thus, Plaintiff has not sufficiently alleged that Defendants meet the definition of "debt collectors" under the FDCPA. Id. (holding defendants, who directed collection efforts at plaintiff, were not debt collectors because plaintiff alleged she had never missed a contractual payment on her loan and therefore her loan was not in default when defendants became her servicers).

Plaintiff contends that Defendants are debt collectors because they "regarded" themselves as such with respect to Plaintiff's account. Plaintiff, however, does not point this Court to any legal authority supporting the idea that a person can be a debt collector under the FDCPA if the person regards themselves as a debt collector, but does not otherwise meet the definition of a debt collector under the statute. Even if Defendants could be deemed debt collectors simply by "regarding" themselves as such, Plaintiff does not allege that Defendants "regarded" themselves as debt collectors or regarded Plaintiff's debt as being in default at the time they became servicers of Plaintiff's indebtedness.

AO 72A
(Rev.8/82)

Plaintiff also contends that Defendants are debt collectors because in their communications to Plaintiff, Defendants identify themselves as such. Again, Plaintiff fails to explain how Defendant Aurora Loan Services's statement that it is a debt collector in a communication to Plaintiff is sufficient to satisfy the FDCPA's definition of debt collector, particularly in light of the absence of supporting factual allegations from Plaintiff. Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's FDCPA claim be **GRANTED**.

## F.    Plaintiff's Real Estate Settlement Procedures Act Claim[6]

Plaintiff's Real Estate Settlement Procedures Act ("RESPA") claim should not be dismissed with respect to Defendant Aurora Loan Services, but should be dismissed with respect to Defendant Aurora Bank. RESPA requires a servicer of a federally related mortgage loan, who receives a Qualified Written Request ("QWR") from a borrower or his agent, to acknowledge receipt of the request within twenty days and to take any necessary action within sixty days. 12 U.S.C. § 2605(e)(1)(A), (e)(2). A QWR is written correspondence that:

(i) includes, or otherwise enables the servicer to identify, the name and

---

[6] In Plaintiff's Amended Complaint, Plaintiff adds a second RESPA claim pursuant to 12 U.S.C. § 2605(g). (Count VI, Am. Compl.). Defendants have not moved to dismiss this claim.

17

account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

On May 9, 2011, Plaintiff's counsel sent a letter to Defendant Aurora Loan Services's in-house counsel and a compliance officer. (Am. Compl., Ex. D). Therein, Plaintiff's counsel introduced themselves; challenged Defendant Aurora Loan Services's contention that Plaintiff was not current on his mortgage; outlined Defendant Aurora Loan Services's alleged violations of state and federal law; demanded that Defendant Aurora Loan Services remove all derogatory credit information about Plaintiff from its trade line, cash all of Plaintiff's checks that were being held, and cease efforts to collect Plaintiff's debt; and advised Defendant Aurora Loan Services that they were preparing to file a lawsuit on Plaintiff's behalf. (Id.) Defendants argue that Plaintiff's counsel's May 9, 2011 letter does not qualify as a QWR because it is devoid of any reasons (specific or non-specific) for Plaintiff's belief that his account is in error. This Court disagrees. While Plaintiff's counsel's letter may be more akin to a settlement demand letter, as Defendants state, it arguably sets forth the reasons that Plaintiff believes his account is in error. Plaintiff's counsel explains that Plaintiff tendered all of the

18

payments as required under Plaintiff's June 2010 loan modification. (Id. p. 2). Plaintiff sent the payments to Defendant Aurora Loan Services via FedEx or other verifiable overnight delivery service. (Id.) All of Plaintiff's checks, with the exception of two, have cleared his account. (Id.) Defendant Aurora Loan Services has failed to process the two outstanding checks and yet continues to erroneously report Plaintiff's account as past due. (Id.) Plaintiff's counsel asks that Defendant Aurora Loan Services cease its debt collection efforts.

Defendants also argue that Plaintiff's RESPA claim fails because Plaintiff cannot establish that the QWR was submitted to the address Defendant Aurora Loan Services designated in its November 24, 2006 Notice of Transfer of Servicing. For Defendants to prevail on this argument, this Court must consider the Notice of Transfer of Servicing, which is attached to Defendants' Motion to Dismiss. However, to consider this document without converting Defendants' Motion to Dismiss to a motion for summary judgment, the Notice of Transfer of Servicing must be central to Plaintiff's RESPA claim and must be referred to by Plaintiff. Brooks, 116 F.3d at 1369 ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such

AO 72A
(Rev.8/82)

documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). It is not. Neither Plaintiff's Complaint nor Amended Complaint contains any allegations about the Notice of Transfer of Servicing or about the address Defendant Aurora Loan Services designated as the address to which borrowers should submit QWRs. "The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion. However, once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment." Prop. Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985) (internal citations omitted). Exercising this discretion, the Court declines to consider the Notice of Transfer of Servicing, and therefore will not address the merits of this argument at this time.

As for Defendant Aurora Bank, Plaintiff has not provided any QWR that it submitted to Defendant Aurora Bank, nor does Plaintiff mention Aurora Bank as a doing business as name for Defendant Aurora Loan Services in the May 9, 2011 letter Plaintiff's counsel sent. Plaintiff does allege that "[o]n or around May 9, 2011, Plaintiff sent a Qualified Written Request ("QWR") to Defendants" and Defendants failed to acknowledge receipt and respond as required. (Am. Compl. ¶¶ 80-82) (emphasis added). However, as noted above, the May 9, 2011 letter does not support this assertion.

AO 72A
(Rev.8/82)

Because the exhibit "contradict[s] the general and conclusory allegations of the pleading, the exhibit[] govern[s]." <u>Griffin Indus., Inc.</u>, 496 F.3d at 1206. Consequently, Plaintiff's Amended Complaint and supporting exhibit fail to plausibly allege a RESPA claim against Defendant Aurora Bank.

Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's RESPA claim be **DENIED** with respect to Defendant Aurora Loan Services and **GRANTED** with respect to Defendant Aurora Bank.

### G.    Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim

Plaintiff's breach of the covenant of good faith and fair dealing claim should survive dismissal with respect to all but one of the allegations against Defendant Aurora Loan Services, but should not survive dismissal with respect to Defendant Aurora Bank. The Supreme Court of Georgia has recognized that "'[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" <u>Brack v. Brownlee</u>, 273 S.E.2d 390, 392 (Ga. 1980) (internal citation omitted). "This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, where the manner of performance is left more or less to the discretion of one of the parties to the contract, he

21

is bound to the exercise of good faith." Camp v. Peetluk, 585 S.E.2d 704, 708 (Ga. App. 2003) (internal quotation marks and citation omitted). The implied duty of good faith does not apply if the parties have drawn the contract so "as to leave decisions absolutely to the uncontrolled discretion of one of the parties,"[7] Automatic Sprinkler Corp. of Am. v. Anderson, 257 S.E.2d 283, 284 (Ga. 1979) (internal quotation marks and citations omitted), or if the contract involves a lease, see Hunting Aircraft, Inc. v. Peachtree City Airport Auth., 636 S.E.2d 139, 142 (Ga. App. 2006). There is no independent cause of action for breach of the covenant of good faith and fair dealing absent an underlying contract between the parties. See Stuart Enters. Int'l, Inc. v. Peykan, Inc., 555 S.E.2d 881, 884 (Ga. App. 2001) ("The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract.").

Defendants argue that Plaintiff cannot state a breach of the covenant of good faith

---

[7] Georgia appellate courts have found that absolute discretion was given to a party when the contract stated: the defendant would be the "'sole judge'" of his financial condition, Charles v. Leavitt, 442 S.E.2d 241, 242 (Ga. 1994); the decision at issue was "'entirely within the discretion of the corporation,'" Automatic Sprinkler Corp. of Am. v. Anderson, 257 S.E.2d 283, 284 (Ga. 1979); the defendant had "'complete and absolute discretion . . . including time, place, and manner' as to marketing techniques to be used," Knight Indus., Inc. v. Turner Mktg., Inc., 276 S.E.2d 860, 862 (Ga. App. 1981).

22

AO 72A
(Rev.8/82)

and fair dealing claim because there is no contract between Plaintiff and either Defendant. This Court agrees in part. The Court has concluded that Plaintiff has not asserted sufficient facts to show that a contract exists between Plaintiff and Defendant Aurora Bank. Therefore, the Court must conclude, as a matter of law, that Plaintiff cannot state a claim for breach of the covenant of good faith and fair dealing as to Defendant Aurora Bank. See Stuart Enters. Int'l, Inc., 555 S.E.2d at 884 (agreeing with the Eleventh Circuit that there is no independent cause of action for breach of the covenant of good faith and fair dealing apart from a contract).

For Defendant Aurora Loan Services, on the other hand, this Court finds that Plaintiff has alleged sufficient facts to set forth a plausible breach of the covenant of good faith and fair dealing claim in part. Plaintiff alleges that Defendant Aurora Loan Services breached the covenant in the following ways: (1) receiving four payments from Plaintiff on or before the applicable due date(s), but refusing to cash, negotiate, and/or post them; (2) failing to make Plaintiff's homeowner's insurance premium payments, causing Plaintiff's coverage to be cancelled; (3) wrongfully holding funds remitted by Plaintiff in a "suspense" account; (4) reporting to credit agencies that Plaintiff's loan was past due without conducting a proper investigation; and (5) wrongfully instituting foreclosure proceedings. (Am. Compl. ¶ 96). Neither the security deed nor the

AO 72A
(Rev.8/82)

adjustable rate note agreement contain any language giving Defendant Aurora Loan Services absolute uncontrolled discretion to negotiate and apply Plaintiff's payments (or to decline to do so), to make Plaintiff's homeowner's insurance premium payments, or to institute foreclosure proceedings. Instead, the security deed gives Defendant Aurora Loan Services discretion in each of these areas.[8] Additionally, neither the adjustable rate note agreement nor the security deed involve a lease. As a result, Defendant Aurora Loan Services had an obligation to act in good faith in executing these duties pursuant to the security deed.

On the contrary, Defendant Aurora Loan Services's alleged act of reporting to credit agencies that Plaintiff's loan was past due without conducting a proper

---

[8] With respect to Plaintiff's payments, the security deed provides that the "[l]ender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, . . . but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current." (Security Deed ¶ 1) (emphasis added). With respect to the payment of Plaintiff's homeowner's insurance premiums, the only condition the security deed imposes is that the escrow items, including insurance premiums, be paid "no later than the time specified under RESPA." (Security Deed ¶ 3). With respect to foreclosure proceedings, the security deed is largely silent about the conditions under which the lender may foreclose. The security deed gives the lender the "power of sale" for Plaintiff's property to guarantee Plaintiff's repayment of the loan and Plaintiff's performance of the covenants and agreements in the security deed, but does not outline when that power must be used. (Transfer of Rights in the Property, Security Deed).

24

investigation was not an obligation set forth in the security deed or the adjustable rate note agreement. Therefore, Plaintiff cannot state a breach of the covenant of good faith and fair dealing with respect to this allegation. See Secured Realty & Invs., Inc. v. Bank of N. Ga., 725 S.E.2d 336, 339 (Ga. App. 2012) ("The implied covenant [of good faith and fair dealing] . . . cannot be breached apart from the contract provisions it modifies . . . .").

Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's breach of the covenant of good faith and fair dealing be **DENIED** with respect Plaintiff's claims that Defendant Aurora Loan Services breached the covenant by: (1) receiving four payments from Plaintiff on or before the applicable due date(s), but refusing to cash, negotiate, and/or post them; (2) failing to make Plaintiff's homeowner's insurance premium payments, causing Plaintiff's coverage to be cancelled; (3) wrongfully holding funds remitted by Plaintiff in a "suspense" account; and (4) wrongfully instituting foreclosure proceedings. The undersigned also **RECOMMENDS** that Defendants' request to dismiss Plaintiff's breach of the covenant of good faith and fair dealing be **GRANTED** with respect to Defendant Aurora Bank and be **GRANTED** with respect to Plaintiff's allegation that Defendant Aurora Loan Services reported to credit agencies that Plaintiff's loan was past due without

AO 72A
(Rev.8/82)

conducting a proper investigation.

## CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. Docket Entry [5]. Specifically, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with respect to:

(1) Plaintiff's breach of contract claim against Defendant Aurora Bank, FSB;

(2) Plaintiff's Fair Debt Collection Practices Act claim;

(3) Plaintiff's Real Estate Settlement Procedures Act claim against Defendant Aurora Bank, FSB;

(4) Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Bank, FSB; and

(5) Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services, LLC with respect to Plaintiff's allegation that Aurora Loan Services, LLC breached the covenant by reporting to credit agencies that Plaintiff's loan was past due without conducting a proper investigation.

The undersigned also **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** with respect to:

26

(1) Plaintiff's breach of contract claim against Defendant Aurora Loan Services, LLC;

(2) Plaintiff's Fair Credit Reporting Act claim;

(3) Plaintiff's Real Estate Settlement Procedures Act claim against Defendant Aurora Loan Services, LLC; and

(4) Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services, LLC with respect to Plaintiff's allegations that Aurora Loan Services, LLC breached the covenant by: receiving four payments from Plaintiff on or before the applicable due date(s), but refusing to cash, negotiate, and/or post them; failing to make Plaintiff's homeowner's insurance premium payments, causing Plaintiff's coverage to be cancelled; wrongfully holding funds remitted by Plaintiff in a "suspense" account; and wrongfully instituting foreclosure proceedings.

The undersigned further **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED AS MOOT** with respect to Plaintiff's breach of fiduciary duty claim, negligence claim, wrongful foreclosure claim, and Fair Business Practices Act claim.

Additionally, the undersigned **GRANTS** Plaintiff's Motion to Amend Complaint, as Plaintiff is entitled to amend his Complaint as a matter of right. Docket Entry [10].

27

**SO ORDERED AND REPORTED AND RECOMMENDED**, this <u>2nd</u> day of

August, 2012.

<u>s/Linda T. Walker</u>
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)