IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY D. GLADSTEIN,

    Plaintiff,

v.

AURORA LOAN SERVICES, LLC
and AURORA BANK, FSB,

    Defendants.

CIVIL ACTION NO.
1:11-CV-02784-TWT-LTW

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

Pending before this Court is Defendants Aurora Loan Services, LLC and Aurora Bank, FSB's (collectively "Defendants") Motion for Partial Dismissal of Plaintiff's Amended Complaint. Docket Entry [16]. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' Motion for Partial Dismissal of Plaintiff's Amended Complaint be **GRANTED IN PART** and **DENIED IN PART**. Docket Entry [16]. Specifically, the undersigned **RECOMMENDS** that Defendants' Motion for Partial Dismissal be **GRANTED** with respect to Plaintiff's wrongful attempted foreclosure claim. The undersigned also **RECOMMENDS** that Defendants' Partial Motion for Dismissal be **DENIED** with respect to Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Loan Services, LLC, Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(g) against Defendant Aurora Loan Services, LLC and Defendant Aurora Bank, FSB, and Plaintiff's remaining breach of the covenant of good

faith and fair dealing against Defendant Aurora Loan Services, LLC.

## I.   **PROCEDURAL BACKGROUND**

Plaintiff initiated this action on August 19, 2011, by filing his Complaint. Docket Entry [1]. Therein, Plaintiff asserted a breach of fiduciary duty claim, breach of contract claim, Fair Credit Reporting Act claim, Fair Debt Collection Practices Act claim, negligence claim, wrongful foreclosure claim, breach of the covenant of good faith and fair dealing claim, Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(e), and Fair Business Practices Act claim. (Id.) On September 13, 2011, Defendants moved to dismiss Plaintiff's Complaint in its entirety. Docket Entry [5]. Plaintiff responded, in part, by amending his Complaint. Docket Entry [10-4]. In the Amended Complaint, Plaintiff removed his breach of fiduciary duty, negligence, wrongful foreclosure, and Fair Business Practices Act claims. Docket Entry [10-4]. Plaintiff also added a wrongful attempted foreclosure claim and a Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(g). (Id.)

In ruling on Defendants' first motion to dismiss (as applied to Plaintiff's Amended Complaint), this Court dismissed Plaintiff's breach of contract claim against Defendant Aurora Bank, FSB, Plaintiff's Fair Debt Collection Practices Act claim, Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Bank, FSB, Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Bank, FSB, and Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan

2

Services, LLC with respect to Plaintiff's allegation that Aurora Loan Services, LLC breached the covenant by reporting to credit agencies that Plaintiff's loan was past due, without conducting a proper investigation. Docket Entries [13, 18].

Thus, the following claims are currently pending in this litigation:

- Plaintiff's breach of contract claim against Defendant Aurora Loan Services, LLC;

- Plaintiff's Fair Credit Reporting Act claim against both Defendants;

- Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Loan Services, LLC;

- Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services, LLC with respect to Plaintiff's allegations that Aurora Loan Services, LLC breached the covenant by: receiving four payments from Plaintiff on or before the applicable due date(s), but refusing to cash, negotiate, and/or post them; failing to make Plaintiff's homeowner's insurance premium payments, causing Plaintiff's coverage to be cancelled; wrongfully holding funds remitted by Plaintiff in a "suspense" account; and wrongfully instituting foreclosure proceedings;

- Plaintiff's wrongful attempted foreclosure claim; and

- Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(g) against both Defendants.

Defendants move for the dismissal of Plaintiff's wrongful attempted foreclosure

3

claim, Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Loan Services, LLC, Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(g) against both Defendants, and Plaintiff's breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services, LLC. Docket Entry [16].

## II.    **FACTUAL BACKGROUND**

On or about May 24, 2010, Mortgage Electronic Registration Systems, Inc. assigned a mortgage loan secured by Plaintiff's residence to Defendant Aurora Loan Services, LLC ("Aurora Loan Services"). (Am. Compl. ¶¶ 5-6). At all times relevant to this action, Plaintiff's loan has been current, and Plaintiff has never been in default. (Am. Compl. ¶ 8). Both Defendants are servicers of Plaintiff's loan. (Am. Compl. ¶ 9).

On or about June 2010, Plaintiff's loan was modified. (Am. Compl. ¶ 7). On or about October 2010, additional modification documents were executed at Defendants' request. (Id.) Since the loan modification, Defendants have been reporting Plaintiff's loan as delinquent to the major credit reporting agencies, despite written and verbal assurances that they would not do so. (Am. Compl. ¶ 10). On or before July 10, 2011, Defendants changed their trade line to reflect within Plaintiff's credit file that Plaintiff's loan was "at least 120 days past due," which they knew was not accurate and would cause damage to Plaintiff. (Id.) Plaintiff believes Defendants have repeatedly, knowingly, and erroneously reported to the major credit reporting agencies that Plaintiff's loan was "at least 120 days past due." (Am. Compl. ¶ 11). As of July 2011,

4

Defendants' trade line failed to include the entry that "the account was under dispute." (Am. Compl. ¶ 28). On or about April 2011, August 2011, and on several other occasions, Plaintiff filed written disputes with Equifax, Experian, and TransUnion about the erroneous and derogatory remarks Defendants reported in Plaintiff's credit file. (Am. Compl. ¶ 21). Plaintiff believes Defendants were informed by the various credit reporting agencies that Plaintiff disputed the erroneous and derogatory credit remarks made by Defendants. (Am. Compl. ¶ 22). Plaintiff also informed Defendants on numerous occasions about the erroneous remarks Plaintiff believes Defendants made. (Am. Compl. ¶ 24). Only after Defendants' counsel became involved did Defendants then begin to report Plaintiff's account as being under dispute. (Am. Compl. ¶ 29). Defendants did not properly investigate Plaintiff's complaints. (Am. Compl. ¶ 23).

Plaintiff discovered that Defendants failed to cash, negotiate, and post at least four of Plaintiff's payments pursuant to the loan modification agreement. (Am. Compl. ¶ 12). The four payments were made on time and in amounts equal or greater than required under the loan modification agreement. (Id.) Also, Defendants have held Plaintiff's timely payments in a "suspense" account, in which such funds remain unapplied to any particular category, such as interest, principal, insurance, and taxes. (Am. Compl. ¶¶ 13, 18). Plaintiff has verified that all of his loan payments were delivered to Defendants on time. (Am. Compl. ¶ 13).

A portion of all of Plaintiff's loan payments included amounts for taxes and insurance escrows. (Am. Compl. ¶ 14). At all times relevant to this action, Defendants

owed Plaintiff a duty to pay homeowner's insurance premiums to his insurance carrier on his behalf. (Am. Compl. ¶ 15). Despite being placed on notice by Plaintiff and despite affirmatively promising to pay Plaintiff's premiums on time, Defendants failed to timely pay Plaintiff's insurance premiums to his insurance carrier. (Am. Compl. ¶ 16). As a result of Defendants' failure to make timely payments, Plaintiff's homeowner's insurance policy was cancelled for non-payment. (Am. Compl. ¶ 17).

Defendants' representatives have contacted Plaintiff, often several times a day, insisting he was delinquent in his loan payments and threatening that if Plaintiff did not make additional loan payments, his home would be foreclosed upon. (Am. Compl. ¶ 25). Defendants sent default notices to Plaintiff, almost on a monthly basis, declaring that Plaintiff was in default, but knowing Plaintiff's loan was not in fact in default. (Am. Compl. ¶ 27). On or about October 14, 2010, Plaintiff received a notice from McCurdy & Candler, LLC stating that Defendants instituted foreclosure proceedings against him, even though Defendants knew that Plaintiff's account was not in default. (Am. Compl. ¶ 26). The notice lists Aurora Loan Services as both the creditor and servicer. (Id.)

On or around May 9, 2011, Plaintiff sent a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act to Defendants at the addresses of 5057 Keller Springs Road, Suite 300, Addison, Texas 75001 and 10350 Park Meadows Drive, Littleton, Colorado 80124. (Am. Compl. ¶ 80). Plaintiff alleges Defendants failed to acknowledge receipt of his QWR within twenty (20) business days and failed

6

to respond to his QWR within sixty (60) business days.

## III. LEGAL ANALYSIS

### A. Defendants' Motion for Partial Dismissal of Plaintiff's Amended Complaint Is Timely

Plaintiff contends that Defendants' partial motion to dismiss his Amended Complaint is time-barred because he did not need to seek the Court's permission to file his Amended Complaint, and therefore his Amended Complaint, which this Court allowed to be filed as a matter of right, should be deemed to have been filed on the date Plaintiff filed his Motion to Amend his Complaint. Consequently, Defendants' partial motion to dismiss Plaintiff's Amended Complaint, filed fourteen (14) days after this Court's Order allowing Plaintiff's amendment, is untimely. This Court disagrees. While it is true that Plaintiff could have filed his Amended Complaint as a matter of right, he did not. Instead, Plaintiff sought the Court's permission to do so. This Court granted Plaintiff permission to file his Amended Complaint on August 2, 2012. Docket Entry [13]. Therefore, Plaintiff's Amended Complaint was deemed to be filed on August 2, 2012. Defendants' partial motion to dismiss Plaintiff's Amended Complaint, filed on August 16, 2012, is thus timely. See Fed. R. Civ. P. 15(a)(3) ("[A]ny required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.").

### B. Rule 12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual

7

allegations in the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Brown v. Crawford Cnty., Ga., 960 F.2d 1002, 1010 (11th Cir. 1992). In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005); see also Iqbal, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint must be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).

"When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached

8

documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment." Brown v. One Beacon Ins. Co. Inc., 317 F. App'x 915, 917 (11th Cir. 2009) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) (per curiam)).

### C.    **Plaintiff's Wrongful Attempted Foreclosure Claim**

Plaintiff's wrongful attempted foreclosure claim should be dismissed. Plaintiff asserts a claim for wrongful attempted foreclosure based on the allegation that on or about October 14, 2010, Defendants attempted to foreclose on his property, notwithstanding that he was not in default on his loan. (Am. Compl. ¶ 76). In support of this claim, Plaintiff references the initial communication letter Defendants' counsel sent to Plaintiff on October 14, 2010, pursuant to the Fair Debt Collection Practices Act. (Id.)

Defendants move to dismiss Plaintiff's wrongful attempted foreclosure claim because Defendants contend that Plaintiff does not allege any facts to show Defendants' knowing and intentional publication of untrue information concerning Plaintiff's financial condition. Plaintiff responds that he has alleged sufficient facts to establish a wrongful attempted foreclosure claim because: (1) the letter he received from Defendants' counsel is a publication of the false claim that he was in default; and (2) the foreclosure notice published in the legal organ as part of the attempted foreclosure, with the same information as the October 14, 2010 letter, would be a false publication. Plaintiff asks this Court to infer that a foreclosure notice was published in the legal

9

organ from his allegation that Defendants attempted to foreclose.

Georgia "courts have recognized a cause of action for wrongful attempted foreclosure when a foreclosure action was commenced, but not completed, where plaintiffs have shown that a defendant 'knowingly published an untrue and derogatory statement concerning the plaintiffs' financial conditions and that damages were sustained as a direct result.'" Morgan v. Ocwen Loan Servicing, LLC, 795 F. Supp. 2d 1370, 1377 (N.D. Ga. 2011) (citing Sale City Peanut & Milling Co. v. Planters & Citizens Bank, 130 S.E.2d 518, 520 (Ga. App. 1963)). As with defamation claims, the untrue and derogatory statement must be published to a third party. See Sigmon v. Womack, 279 S.E.2d 254, 257 (Ga. App. 1981) ("A libel is published as soon as it is communicated to any person other than the party libeled." (emphasis added) (internal quotation marks and citation omitted)); see also Bates v. JPMorgan Chase Bank, N.A., No. 4:12-CV-43 (CDL), 2012 WL 3727534, at *5 (M.D. Ga. Aug. 27, 2012) (wrongful attempted foreclosure claim based upon foreclosure notices that were run in the newspaper); Gass v. CitiMortgage, Inc., No. 1:11-CV-3713-RWS-JSA, 2012 WL 3201400, at *11 (N.D. Ga. June 25, 2012) (wrongful attempted foreclosure claim based upon notice of sale published in local newspaper).

Here, the Court need not address whether Defendants' statements in the October 14, 2010 letter were untrue and derogatory because Plaintiff has not pled sufficient facts to show that the statements were published. Contrary to Plaintiff's argument, the letter Plaintiff received from Defendants' counsel does not constitute publication for a

10

wrongful attempted foreclosure claim because Plaintiff is not a "person other than the libeled party." See Sigmon, 279 S.E.2d at 257. Also, this Court cannot reasonably infer that a foreclosure notice containing the same information as the October 14, 2010 letter was published in a legal organ as part of Defendants' alleged attempted foreclosure. The only allegation related to Plaintiff's wrongful attempted foreclosure claim is that Defendants attempted to foreclose on Plaintiff's property on or about October 14, 2010, notwithstanding the fact that Plaintiff was not in default. (Am. Compl. ¶ 76). Plaintiff references and incorporates the October 14, 2010 letter he received from Defendants' counsel. (Id.; Am. Compl. Ex. C) However, there is nothing in this initial communication letter to suggest that Defendants' counsel had published or prepared a foreclosure notice. (See Am. Compl. Ex. C). Instead, Defendants' counsel simply informs Plaintiff that its efforts to collect on Plaintiff's debt "may involve foreclosure proceedings against [his] property" and outlines the steps Plaintiff should take if he is interested in reinstating the loan to avoid foreclosure. (Id.) Thus, there are no allegations from which this Court can infer that a foreclosure notice was published in a legal organ. Absent any allegations to plausibly suggest that Defendants actually published untrue and derogatory information to a third party, Plaintiff's wrongful attempted foreclosure claim should fail. See Sigmon, 279 S.E.2d at 256 ("The publication of libelous matter is essential to recovery."); see also Roper v. Bank of Am., N.A., No. 1:11-CV-3412-RWS, 2012 WL 1134805, at *2 (N.D. Ga. Apr. 4, 2012) (dismissing plaintiff's wrongful attempted foreclosure claim because plaintiff "makes

11

no allegations that defamatory statements were published about him"); <u>Austin v. Bank of Am., N.A.</u>, No. 1:11-CV-3346-RWS, 2012 WL 928732, at *1 (N.D. Ga. Mar. 16, 2012) (same). Therefore, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's wrongful attempted foreclosure claim be **GRANTED**.

**D.** **Plaintiff's Real Estate Settlement Procedures Act Claim Pursuant to 12 U.S.C. § 2605 (e)**

Plaintiff's Real Estate Settlement Procedures Act ("RESPA") claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Loan Services should not be dismissed. RESPA requires a servicer of a federally related mortgage loan, who receives a QWR from a borrower or his agent, to acknowledge receipt of the request within twenty days and to take any necessary action within sixty days. 12 U.S.C. § 2605(e)(1)(A), (e)(2). A QWR is written correspondence that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

On May 9, 2011, Plaintiff's counsel sent a letter to Defendant Aurora Loan Services's in-house counsel and a compliance officer. (Am. Compl., Ex. D). Therein, Plaintiff's counsel introduced themselves; challenged Defendant Aurora Loan Services's contention that Plaintiff was not current on his mortgage; outlined Defendant Aurora Loan Services's alleged violations of state and federal law; demanded that Defendant

12

Aurora Loan Services remove all derogatory credit information about Plaintiff from its trade line, cash all of Plaintiff's checks that were being held, and cease efforts to collect Plaintiff's debt; and advised Defendant Aurora Loan Services that counsel was preparing to file a lawsuit on Plaintiff's behalf. (Id.)

Defendants argue that Plaintiff's RESPA claim fails because Plaintiff cannot establish that the QWR was submitted to the address Defendant Aurora Loan Services designated in its November 24, 2006 Notice of Transfer of Servicing Rights. For Defendants to prevail on this argument, this Court must consider the Notice of Transfer of Servicing Rights, which was attached to Defendants' Motion to Dismiss Plaintiff's Complaint. However, to consider this document without converting Defendants' partial motion to dismiss to a partial motion for summary judgment, the Notice of Transfer of Servicing Rights must be central to Plaintiff's RESPA claim and must be referred to by Plaintiff in the Amended Complaint. Brooks, 116 F.3d at 1369 ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

In ruling on Defendants' first motion to dismiss, this Court, in its discretion,[1]

---

[1] "The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion. However, once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one

13

declined to consider the Notice of Transfer of Servicing Rights because the Court concluded it was not central to the plaintiff's claim as Plaintiff's Amended Complaint did not contain any allegations about the Notice of Transfer of Servicing Rights or about the address Defendant Aurora Loan Services designated as the address to which borrowers should submit QWRs.

In again pressing for the dismissal of this claim, Defendants argue that to base a RESPA claim pursuant to 12 U.S.C. § 2605(e) on a defendant's failure to acknowledge and respond to a QWR, a plaintiff must allege the address to which the letter was sent, it was sent to the address provided by the defendant for such inquiries, and the manner by which the plaintiff knows defendant received the QWR. In support of this argument, Defendants rely upon Malally v. BAC Home Loan Servicing, LLC, No. 3:10-CV-0074-JTC-JFK, 2010 WL 5140626, at *8 (N.D. Ga. Oct. 8, 2010). Defendants, however, misread Malally. In Malally, this Court analyzed the plaintiff's allegation that "she 'sent a Qualified Written Request on May 12, 2010[,] and was received by Defendant on May 14, 2010. Defendants did not respond in the 20 day period and are in default." Id. In deciding that this conclusory statement was insufficient to state a claim under RESPA, the Court stated, "Plaintiff does not provide any allegation of fact regarding the address to which the QWR was sent, that the QWR was sent to the address provided by Defendant for receipt of such inquiries, or the manner by which she knows Defendant

_____

for summary judgment." Prop. Mgmt. & Invs., Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985) (internal citations omitted).

14

received the QWR." (Id.) (emphasis added). The "or" the Court used rather than the "and" Defendants impose suggests that the Malally plaintiff was required to set forth allegations that fell into one of the three categories listed, not all three.

Unlike the plaintiff in Malally, Plaintiff here alleges that he sent his QWR on May 9, 2011, directly to Defendant Aurora Loan Services at the addresses of 5057 Keller Springs Road, Suite 300, Addison, Texas, 75001 and 10350 Park Meadows Drive, Littleton, Colorado, 80124. (Am. Compl. ¶ 80). Plaintiff further alleges that Defendant Aurora Loan Services failed to acknowledge or respond to his QWR as required by RESPA. (Am. Compl. ¶¶ 81-82). Plaintiff also attaches the QWR to his Amended Complaint. From reading the QWR, it is clear that Plaintiff sent the QWR to in-house counsel and a compliance officer for Defendant Aurora Loan Services. These allegations sufficiently state a plausible RESPA claim pursuant to 12 U.S.C. § 2605(e).

While Defendants have shown this Court what ultimately may be necessary for Plaintiff to prevail on this claim, asking the Court to consider the November 24, 2006 Notice of Transfer of Servicing Rights–a document neither referenced in nor attached to Plaintiff's Amended Complaint–is simply too much at the motion to dismiss stage. Although Defendants lean heavily on the Notice of Transfer of Servicing Rights, and no doubt this document will be central to Defendant Aurora Loan Services's defense, Defendants have not established that this document is central to Plaintiff's claims. In fact, this is not likely a document Plaintiff would tender at all in support of his claims (assuming Plaintiff even received this document). Accordingly, the undersigned

15

**RECOMMENDS** that Defendants' request to dismiss Plaintiff's RESPA claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Loan Services be **DENIED**.

### E. Plaintiff's Real Estate Settlement Procedures Act Claim Pursuant to 12 U.S.C. § 2605 (g)

Plaintiff's RESPA claim pursuant to 12 U.S.C. § 2605(g) against both Defendants should not be dismissed. RESPA requires that "[i]f the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due." 12 U.S.C. § 2605(g).

Defendants move for the dismissal of Plaintiff's RESPA claim on two grounds. First, Defendants argue that Plaintiff has not alleged his loan was "federally related" within the meaning of RESPA. Second, as to Defendant Aurora Bank FSB, Defendants argue that Plaintiff's RESPA claim fails because Plaintiff alleges that pursuant to the contract, Defendants were required to use the monies in the escrow account to pay Plaintiff's homeowner's insurance premiums, but this Court has already determined that Plaintiff cannot show that he is in privity of contract with Defendant Aurora Bank.

In response to Defendants' first argument, Plaintiff argues that the original note reflects that it is a "Single Family Fannie Mae Modified Instrument" and the security deed reflects that it is a "Single Family – Fannie Mae/Freddie Mac Uniform Instrument." Plaintiff further argues that Section 3 of the security deed entitled "Funds for Escrow

16

Items" specifically references RESPA requirements. Plaintiff attached the note and the security deed to his Amended Complaint. Thus, the documents attached to Plaintiff's Amended Complaint make it clear that it was a federally related loan. In response to Defendants' second argument, Plaintiff contends that the plain language of 12 U.S.C. § 2605(g) makes it applicable to servicers, and both Defendants admit to being servicers of Plaintiff's loan in their Answer.

As defined by RESPA, the term "federally related mortgage loan" includes any loan that:

> (A) is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and
>
> (B)(i) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or
>
> (ii) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency . . . .

12 U.S.C. § 2602(1). In moving to dismiss Plaintiff's RESPA claim pursuant to 12 U.S.C. § 2605(g), Defendants do not specify which portion of the federally related mortgage loan definition Plaintiff does not meet. Defendants also do not address Plaintiff's response that his Amended Complaint and the documents attached thereto establish that his loan meets the definition of a federally related mortgage loan because

17

the note reflects that it is a "Single Family Fannie Mae Modified Instrument," and the security deed reflects that it is a "Single Family–Fannie Mae/Freddie Mac Uniform Instrument" into addition to referencing RESPA requirements in the escrow items section. (Am. Compl. Ex. A). Hearing nothing further from Defendants and having no specific challenge about Plaintiff's alleged failure to meet the federally related mortgage loan definition to address, this Court presumes that Defendants agree with Plaintiff's argument and no longer seeks dismissal of Plaintiff's 12 U.S.C. § 2605(g) claim on this ground.

As for Defendants' second argument, this Court is not persuaded that Plaintiff's 12 U.S.C. § 2605(g) claim fails as to Defendant Aurora Bank for the reason argued by Defendants. Admittedly, Plaintiff states that Defendants were required to use the monies in the escrow account to pay his homeowner's insurance premiums pursuant to the loan contract. (Am. Compl. ¶ 88). However construing the Amended Complaint in a light most favorable to Plaintiff, it appears Plaintiff is referencing the loan contract as part of the allegations necessary to state a claim pursuant to 12 U.S.C. § 2605(g), not in an effort to allege another breach of contract claim against Defendant Aurora Bank. Under RESPA, "[i]f the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as

18

such payments become due." 12 U.S.C. § 2605(g). Plaintiff alleges that the terms of his loan, as set forth in the contract, required him to escrow an amount sufficient to cover his homeowner's insurance premiums. (Am. Compl. ¶ 87). As further evidence that Plaintiff was not responsible for paying his own homeowner's insurance premiums, Plaintiff alleges that the loan contract contemplated that Defendants would be responsible for paying his homeowner's insurance premiums out of the escrow funds. (Am. Compl. ¶¶ 88). Defendants failed to do so. (Id.) Defendants are servicers of Plaintiff's loan. (Am. Compl. ¶ 9). Taken together, these allegations make a plausible claim that Defendants, as servicers, failed to uphold their obligations under 12 U.S.C. § 2605(g). Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's RESPA claim pursuant to 12 U.S.C. § 2605(g) be **DENIED**.

### F. Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim

Plaintiff's remaining breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services should survive dismissal. The Supreme Court of Georgia has recognized that "'[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" Brack v. Brownlee, 273 S.E.2d 390, 392 (Ga. 1980) (internal citation omitted). "This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." Camp v. Peetluk, 585 S.E.2d 704, 708 (Ga. App. 2003)

19

(internal quotation marks and citation omitted). There is no independent cause of action for breach of the covenant of good faith and fair dealing absent an underlying contract between the parties. See <u>Stuart Enters. Int'l, Inc. v. Peykan, Inc.</u>, 555 S.E.2d 881, 884 (Ga. App. 2001) ("The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract.").

Defendants argue that Plaintiff cannot state a breach of the covenant of good faith and fair dealing claim because there is no independent cause of action for breach of the covenant of good faith and fair dealing. Defendants' argument is curious because this Court has already concluded that an underlying contract exists between Plaintiff and Defendant Aurora Loan Services. Defendants make no further arguments about the contract between Plaintiff and Defendant Aurora Loan Services in their partial motion to dismiss Plaintiff's Amended Complaint. Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's remaining breach of the covenant of good faith and fair dealing claim against Defendant Aurora Loan Services be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion for Partial Dismissal of Plaintiff's Amended Complaint be **GRANTED IN PART** and **DENIED IN PART**. Docket Entry [16]. Specifically, the undersigned **RECOMMENDS** that Defendants' Motion for Partial Dismissal be

20

**GRANTED** with respect to Plaintiff's wrongful attempted foreclosure claim. The undersigned also **RECOMMENDS** that Defendants' Partial Motion for Dismissal be **DENIED** with respect to Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(e) against Defendant Aurora Loan Services, LLC, Plaintiff's Real Estate Settlement Procedures Act claim pursuant to 12 U.S.C. § 2605(g) against Defendant Aurora Loan Services, LLC and Defendant Aurora Bank, FSB, and Plaintiff's remaining breach of the covenant of good faith and fair dealing against Defendant Aurora Loan Services, LLC.

      **SO REPORTED AND RECOMMENDED**, this _18___ day of January, 2013.


                              s/Linda T. Walker
                              LINDA T. WALKER
                              UNITED STATES MAGISTRATE JUDGE